1
2  **RIGHETTI GLUGOSKI, P.C.**
   John Glugoski, Esq. (SBN 191551)
3  220 Halleck Street, Suite 220
   San Francisco, CA 94129
4  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
5  E-Mail: jglugoski@righettilaw.com

6
   **NATHAN & ASSOCIATES, APC**
7  Reuben D. Nathan (State Bar No. 208436)
   2901 W. Coast Hwy., Suite 200
8  Newport Beach, California 92663
   Telephone; (949)270-2798
9  Facsimile:  (949)209-0303
   E-Mail: rnathan@nathanlawpractice.com
10

11
12 Attorneys for Plaintiffs, JEFF SMOROWSKI and DANIEL LENHART

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16 | JEFF SMOROWSKI and DANIEL | Case No. 2:20-cv-10739-MWF-SK |
17 | LENHART, on behalf of themselves and all similarly situated persons, | |
18 | | **CLASS ACTION** |
   | | **FIRST AMENDED COMPLAINT** |
19 |                  Plaintiff, | |
20 | | |
   |            vs. | **JURY TRIAL DEMANDED** |
21 | | |
22 | DOMINO'S PIZZA LLC; | |
23 | DOMINO'S PIZZA, INC. and DOES 1 through 25 inclusive, | |
24 | | |
25 | |
   |               Defendants | |
26

27

28

FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Jeff Smorowski ("Smorowski") and Daniel Lenhart ("Lenhart") (collectively referred to as "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against DOMINO'S PIZZA LLC, DOMINO'S PIZZA INC. ("Defendants").   Plaintiffs makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself that is based on his own personal knowledge.

## INTRODUCTION

1.     Domino's Pizza, Inc and Domino's Pizza, LLC ("Domino's") regards themselves as a pioneer and leader of delivering quality pizza to its consumers. According to its website, "From humble beginnings as a single pizza restaurant in 1960, Domino's become today's recognized world leader in pizza delivery.   At Domino's, we're all about pizza – and from the day our doors opened, we have dedicated ourselves to making and delivering delicious food with high quality ingredients[1]."

2.     Through its advertising, Domino's touts that it is an innovator and pioneer of "delivery ideas that make it easier and more convenient for our consumers. When you think about pizza places that have delivered hot and fresh from the oven to your door, think Domino's, because we're constantly updating our menu to include…just for you."

3.     According to its website, Domino's has also developed technology to further the customer's experience when ordering food.  "Domino's Tracker in an innovation in food delivery that enables consumers to follow the progress of their order from the time it's placed until it arrives at the door" and "Domino's AnyWare[TM] ordering technologies, which enables consumers to leverage technology to place their order via text, smartphone, tweet, and more."

---

[1] https://www.Domino's.com/en/about-pizza/ (last visited October 29, 2020)

4.      Domino's website enunciates to its consumers, "we're all about savings, we also added coupons, and promos to the website."  Domino's makes an affirmative representation to its consumers that it has its consumers' best interest at heart with the intention of saving them money on purchase of Domino's products.

5.      However, Domino's advertising is not limited to its website, but Domino's promotes, communicates, advertises, and employs the same marketing tools, including catch-lines, special offers, and general promotional advertising framework when Domino's implements a marketing campaign.

6.      Domino's has been s a staple and leader in the food and pizza industry for decades by offering food promotions to its consumers.  Domino's consumers are well aware that Domino's offers a variety of ways for its consumers to save money on Domino's pizzas and related products, because Domino's touts that it saves its consumers money by offering a variety of discounts through the use of its coupons. Essentially, consumers of Domino's have become accustom to receiving discounts on Domino's products whether directly from the original price.

7.      Among its many discounted programs is Domino's "Mix & Match" ("Mix & Match Deal"),[2] which has been in existence since (at least) 2009. Domino's has used a similar advertisement for its "Mix & Match Deal" $5.99 promotional deal through website, televisions, Internet, billboards, posters, and pictures within the statutory period. Example of Domino's' Mix & Match Deal are set forth below:

---

[2] Consumers are not required to be a member of a Domino's loyalty reward program or some other similar service in order to make a purchase under Domino's' Mix & Match deal through Domino's website.

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   8.   Plaintiffs allege on information and belief that Domino's advertisements

20   regarding its Mix & Match Deal are uniform, consistent, distributed, patterned, and is

21   to be equally applied the same – every Mix & Match advertisement provides the

22   prospective customer with a discount on the basis of a coupon or discount with the

23   purchase of two or more items from a designated list of products which is a price

24   reduction from Domino's' standard price for the product in question.

25   9.   In carrying out its deceptive scheme, Domino's uses advertisements that

26   illustrate the wide variety of products available to the customer.   On the "Mix &

27   Match advertisement itself, Domino's choice of few words is intended to highlight the

28

"deal" available to its consumers. Domino's also prompts its consumers to act now with the use of its wording "ORDER NOW," which indicates the urgency in ordering and the fact that the Mix & Match deal may no longer be available in the near future. These type of tactics employed by Domino's is intended to get an immediate response from consumers.

10.     The Mix & Match advertisement also contains words: "START YOUR ORDER," "MIX & MATCH DEAL," and "CHOOSE ANY 2 OR MORE." Domino's' use of a larger front size for "$5.99" with white lettering with a red bold enunciated border is the most prominent wording on the advertisement, which is intended and does attract consumers. On information and belief Domino's implements the same or substantially similar advertising in color, font size, and borders for its Mix & Match deal whether through website, television, print, or other forms of advertisements.

11.     Domino's Mix & Match deal requires the prospective consumer to purchase 2 or more items from its designated list of products at the price of $5.99, which excludes taxes. Most food businesses that provide discounts to their consumers through the use of coupons or other forms of discounts, generally have limited products and even more limited categories available to their consumers.

12.     Domino's has a wide variety of products available to consumers through the Mix & Match deal, which is prominently stated on its website or is available in through other forms of advertisements. Consumers can apply the coupon to a large selection of Domino's products under the Mix & Match deal that includes broad categories such as pizza, salads, cookies, chicken, sandwiches, breads and/or pasta.

13.     The list of products available through Domino's Mix & Match Deal are:

**Pizza (Medium) 2 Topping Pizza:**
Style:  Hand Tossed; Crunchy Thin Crust; Handmade Pan
Sauce: Robust Inspired Tomato Sauce; Hearty Marinara Sauce; Honey BBQ Sauce; Garlic Parmesan Sauce; Alfredo Sauce; Ranch
Toppings:

Meats: Ham; Beef; Salami; Pepperoni; Italian Sausage; Premium Chicken; Bacon; Philly Steak
Non-Meats: Hot Buffalo Sauce; Garlic; Jalapeno Peppers; Diced Tomatoes; Black Olives; Mushrooms; Pineapple; Shredded Provolone Cheese; Cheddar Cheese; Green Peppers; Spinach; Roasted Red Peppers; Feta Cheese; Shredded Parmesan Asiago

### Bread

*Twists:*
Parmesan Bread Twists; Garlic Bread Twists; Cinnamon Bread Twists
*Stuffed Cheesy Bread:*
Stuffed Cheesy Bread with Bacon & Jalapeno; Stuffed Cheesy Bread with Spinach & Feta; Stuffed Cheesy Bread

### Salads:

Classic Garden; Chicken Cesar
Marbled Cookie Brownie:
Domino's Signature Marble Cookie Brownie

### Chicken:

Boneless Chicken
Specialty Chicken: Crispy Bacon & Tomato;
Sweet BBQ Bacon; Spicy Jalapeno - Pineapple

(collectively referred to as "Products").

14.     Consistent with Defendants' self-promotion and advertising through print, television, radio, Internet, and/or other forms of advertising, Domino's represents, warrants, and promises its consumers that any two (2) of the Products applying the coupon under the Mix & Match deal will cost the prospective customer $5.99 per product (or $11.98), excluding sales taxes.

15.     Consumers have the expectation that reputable businesses such as Domino's will conform to any representations, warranties, or statements made in connection with the Mix & Match deal.

16.     Contrary to Domino's' representations, warranties, or statements regarding the discounted price of the Products, it charges consumers more than $5.99 per Product under the Mix & Match deal. On information and belief, Domino's has a pattern and practice of charging its consumers an amount exceeding $5.99 per product from the list of categories. Domino's representations, warranties, and/or statements relating to the $5.99 price per product pursuant to the Mix & Match deal is false and/or misleading.

17.　　Plaintiffs Smorowski and Lenhart, and members of the classes described below paid more than $5.99 for Products under the Mix & Match Deal. Contrary to Domino's representations regarding the price of the Products, consumers paid more money than what was stated on Domino's advertisements under the representations as set forth under the Mix & Match Deal.

18.　　Defendants' representations, warranties, and statements that the Products are $5.99 per product when Domino's charges more is unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, and continues to this day.  As such, Defendants' practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL").  Plaintiff also brings claims for fraud, unjust enrichment and breach of express warranty.

## JURISDICTION AND VENUE

19.　　This Court has personal jurisdiction over Defendants.  Defendants purposefully avails itself of the California consumer market and distributes the Products to hundreds of locations within this County and thousands of retail locations throughout California and the United States, wherein the Products are purchased by thousands of consumers every day.

20.　　This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims

of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

21.    Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## **PARTIES**

22.    Plaintiff Jeff Smorowski is a citizen of California, residing in Los Angeles County.  Plaintiff Daniel Lenhart is a citizen of California, residing in Los Angeles County.

23.    Mr.  Smorowski regularly purchased Products under Domino's Mix & Match deal between August 19, 2020 through August 24, 2020 at locations near and around his home in La Mirada, CA.

24.    On August 19, 2020, Mr.  Smorowski purchased Two Medium Regular Pizzas and a Sweet BBQ Bacon Chicken Sandwich under Domino's' Mix & Match deal at Domino's located at 2934 Westminster, Seal Beach, California. Mr. Smorowski should have been charged $5.99 for each product or $17.97 in total, but Domino's charged Mr. Smorowski more. Similarly, on August 19, 2020, Mr. Smorowski purchased items under the Mix and Match Deal and was charged more than $5,99 per item.

25.    On September 26, 2019, Mr. Lenhart purchased Two Medium Regular Pizzas.  Mr. Lenhart should have been charged $5.99 for each product or $11.98 in total, but Domino's charged Mr. Lenhart more than the advertised price. Within the last 3 years, including during Super bowl Sunday, Mr. Lenhart has purchased items under Domino's Mix and Match Deal. Mr.  Lenhart has never made a purchase of any item through Domino's website. Mr. Lenhart purchased the Products under Domino's Mix & Match deal between 2017-2019 at locations near and around his

home in Arcadia and West Covina in or about the week of September 26 and the first week of February (Super bowl Sunday) in the years 2017-2019. Additionally, Mr. Lenhart had made additional purchases of items under Domino's Mix and Match during the same period and was charged more than $5.99 under Domino's Mix and Match Deal. In each instance during the statutory period, Mr. Lenhart was charged more than $5.99 for the items he purchased under the Mix and Match Deal. In each instance, Domino's pricing did not confirm to its representations in connection with its Mix and Match Deal.

26.     Each time Mr. Smorowski and Mr. Lenhart purchased Products under Domino's Mix and Match deal, Mr. Smorowski and Mr. Lenhart saw and read the representations, "MIX & MATCH DEAL," "CHOOSE ANY TWO OR MORE," for "$5.99 each," and relied on the representations, warranties, and statements that the Products would be sold at the price of $5.99. Mr. Smorowski and Mr. Lenhart understood these representations, warranties, and statements to mean that the price of the Products under the Mix and Match deal is $5.99 per product on the designated list of Products. Mr. Smorowski and Mr. Lenhart purchased the Products at a price above the stated $5.99 price, and would not have bought the Product had he known Domino's representations, warranties, and statements he relied on was false, misleading, deceptive and unfair.

27.     Mr. Smorowski and Mr. Lenhart would purchase the Products again in the future if Defendants' actual price of Products conformed to its representations, warranties, and statements.

28.     Defendant Domino's Pizza, LLC is a Delaware limited liability company that has its principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan.

29.     Defendant, Domino's Pizza, Inc. is a Delaware Corporation that has its principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan.

30.     Defendants Domino's Pizza, LLC, Domino's Pizza, Inc., and DOES 1 through 25, inclusive are collectively referred to as "Defendants")

31.     Defendants advertise and market the Mix and Match deal in retail stores across the United States, including California. Defendants knew or should have known that they were overcharging consumers that made purchases under the Mix and Match deal. Defendants' representations, warranties, and statements regarding the Mix and Match deal are false and misleading to a reasonable consumer, because Defendants charge more than the advertised pricing of $5.99 per item under the Mix and Match deal.

## FACTS COMMON TO ALL CAUSES OF ACTION

32.     Discounts, sales promotions, and other techniques are instruments that seek to increase sales of products and brands.  There are several factors working through an offered discount which causes consumers to make purchases, including, but not limited to, attractiveness of the discount promotion, impulsiveness, hedonic perception, and financial risk perception which all drive the consumer's purchasing intent[3].

33.     Over the past three decades, consumers have become increasingly interested in obtaining discounts while purchasing goods or products. In 1887, Coca-Cola distributed the first-ever coupon, which served to shape the future of commerce and consumers have never looked back. RetailMeNot, Inc., the world's largest digital coupon marketplace indicated that consumer demand for discounts or coupons will continue to increase.

---

[3] Campbell, L., & Diamond, W.D. (1990). Framing and sales promotion: The characteristics of a "Good Deal." Journal of Consumer Marketing, 7(4), 25-31; Bruner, G.C. II & Hensel, P.J. (1998) Marketing scales handbook; A compilation of multi-items measures, Chicago: American Marketing Association; An analysis of the influence of discount sales promotion in consume buying intent and the moderating effects of attractiveness.

34.     Consumers surveyed in the U.S. and India (76%) rank the highest among shoppers who believe saving is important and more than half (53%) of U.S. residents favor brands that issue coupons online or in-store because they help them buy the things they want or need.[4]

35.     Discounts and savings have become so popular that it has impacted the restaurant and food industry. 41% of Pizza customers use a coupon at least once a week and 64% would switch to try a new pizza business if a discount or saving was offered.  Domino's has always been aware that its Mix & Match deal would create additional demand from its customers.

36.     The Mix & Match deal includes broad categories of food such as pizza, salads, cookies, chicken, sandwiches, breads and/or pasta.

37.     The Mix and Match deal applies to the following products: Pizza Style: Hand Tossed; Crunchy Thin Crust; Handmade Pan Sauce: Robust Inspired Tomato Sauce; Hearty Marinara Sauce; Honey BBQ Sauce; Garlic Parmesan Sauce; Alfredo Sauce; Ranch; Toppings: Meats: Ham; Beef; Salami; Pepperoni; Italian Sausage; Premium Chicken; Bacon; Philly Steak; Non-Meats: Hot Buffalo Sauce; Garlic; Jalapeno Peppers; Diced Tomatoes; Black Olives; Mushrooms; Pineapple; Shredded Provolone Cheese; Cheddar Cheese; Green Peppers; Spinach; Roasted Red Peppers; Feta Cheese; Shredded Parmesan Asiago; Parmesan Bread Twists; Garlic Bread Twists; Cinnamon Bread Twists; Stuffed Cheesy Bread with Bacon & Jalapeno; Stuffed Cheesy Bread with Spinach & Feta; Stuffed Cheesy Bread; Classic Garden; Chicken Cesar; <u>Marbled Cookie Brownie: </u>Domino's Signature Marble Cookie Brownie; Boneless Chicken; Specialty Chicken: Crispy Bacon & Tomato; Sweet BBQ Bacon; and Spicy Jalapeno – Pineapple.

---

[4]     https://retailmenot.mediaroom.com/2013-08-21-A-Coupon-Nation-Americans-Proudly-Use-Coupons-More-Than-Shoppers-in-Great-Britain-India-and-China-Among-Others

38.     On information and belief, Defendants' advertisements regarding the Mix and Match deal, as herein stated, occurred at all times during the last four years, at least.

39.     Based on the language that appears on the advertisements, Plaintiffs and Class Members believed the price of the first product to be $5.99, the second to be $5.99, with the ability to make additional purchases for $5.99 from the designated list of the Mix and Match deal.

40.     The phrases "MIX & MATCH DEAL," and "CHOOSE ANY 2 OR MORE," "MEDIUM 2-TOPPING PIZZA," "BREAD TWISTS," "SALAD," MARBLED COOKIE BROWNIE," SPECIALTY CHICKEN," OVEN BAKED SANDWICH," STUFFED CHEESY BREAD," 8-PIECE BONELESS CHICKEN," "OR PASTA IN A DISH FOR $5.99 EACH"," $5.99," "ORDER NOW," coupled with all any identical or substantially similar language are representations to a reasonable consumer. The phrases are misleading to a reasonable consumer because Defendants charge consumers more than advertised $5.99 for each product under the Mix and Match Deal.

41.     The package design plays a crucial role in consumer purchase decisions. Consumers take on average seven seconds to decide whether to buy a product. Effective product packaging therefore must quickly make an emotional and psychological impression on the consumer in the very small window of time that the consumer makes his or her purchase decision.  Against that backdrop, consumer impressions of whether a product is at a discount are commonly based on so-called "cues" of bargains, discounts, and coupons.  One common technique marketers use to signal that a product is at a discount is to emphasize the "deal" the consumer will receive.  Conversely, another common technique is to emphasize the amount to be paid as a result of the purported discount to the consumers.  Such cues are commonly reinforced with imagery and images as described herein above paragraphs 8-10.

42.     Defendants knew that consumers would rely on Defendants' advertising without verifying on the receipt if the discount was applied to the Mix and Match deal.

## CLASS ALLEGATIONS

43.     Plaintiffs Smorowski and Lenhart seek to represent a class defined as all persons in the United States who purchased the Products through Defendants' "Mix and Match" deal during the class period (the "Class").  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

44.     Plaintiffs Smorowski and Lenhart seek to represent a Subclass of all persons in California who purchased the Products through Defendants' "Mix and Match" deal during the class period (the "California Subclass").  Excluded from the California Subclass are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

a.     whether Defendants misrepresented material facts concerning their Mix and Match advertising;

b.     whether Defendants' conduct was unfair and/or deceptive;

c.     whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this complaint such that it would

be inequitable for Defendants to retain the benefits conferred upon them by Plaintiffs and the classes;

        d.     whether Defendants breached express warranties to Plaintiffs and the classes;

        e.     whether Plaintiffs and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

46.    Plaintiffs' claims are typical of those of other class members because Plaintiffs, like all members of the classes, purchased Defendants' Products bearing the Mix and Match representations and Plaintiffs sustained damages from Defendants' wrongful conduct.

47.    Plaintiffs will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the classes.

48.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.    The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

50.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I
### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* (*For Damages and Injunctive Relief*)

51.     Plaintiffs Smorowski and Lenhart hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiffs Smorowski and Lenhart brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

53.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

54.     Plaintiffs Smorowski and Lenhart and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

55.     Plaintiffs Smorowski and Lenhart, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

56.     The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

57.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiffs Smorowski and Lenhart and the other members of the California Subclass that the Products would be sold at a certain price point i.e. $5.99 per item when in fact Defendants charge a price that is higher than the advertised price.  In other words, Defendants sell the Products for prices that do not conform to their representations, warranties, and statements.

58.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

59.     On September 1, 2020, Plaintiff Smorowski mailed a notice letter to Defendants Domino's Pizza, LLC and Domino's Pizza, Inc. consistent with California Civil Code § 1782(a), and Defendants received the letters on September 8, 2020. The letters were sent on behalf of Smorowski and all other persons similarly situated.  On February 9, 2021, Plaintiff Lenhart mailed a notice letter to Defendants Domino's Pizza, LLC and Domino's Pizza, Inc. consistent with California Civil Code § 1782(a). The letters were sent on behalf of Lenhart and all other persons similarly situated.

60.     Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Smorowski, on behalf of himself and all other members of the California Subclass, seeks injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices.  Plaintiff Lenhart seeks injunctive relief but reserves the right to amend this complaint to include a claim for damages.

## **COUNT II**
### **Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.***

61.     Plaintiffs Smorowski and Lenhart hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

62.     Plaintiffs Smorowski and Lenhart bring this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

63.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

64.     Defendants violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

65.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

66.     Defendants violated the "fraudulent" prong of the UCL by misrepresenting that the Products would be sold at the advertised price of $5.99 per product, however Defendants actually sell the Products for a higher price.

67.     Plaintiffs Smorowski and Lenhart and the California Subclass lost money or property as a result of Defendants' UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew Defendants would not conform their pricing to their representations, (b) they paid more than the advertised price based on Defendants' misrepresentations; and (c) the price of the Products or the value of the Products do not have the characteristics, uses, or benefits as promised.

## COUNT III
### Violation Of California's False Advertising Law ("FAL"),
### California Business & Professions Code §§ 17500, *et seq.*

68.     Plaintiffs Smorowski and Lenhart hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

69.     Plaintiffs Smorowski and Lenhart bring this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

70.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or

performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

71.     Defendants committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products would be sold for the advertised price of $5.99 under the Mix and Match deal.

72.     Defendants knew or should have known through the exercise of reasonable care that their representations about the price of Products were untrue and misleading.

73.     Defendants' actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiffs Smorowski and Lenhart and the California Subclass lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the price of the Products were greater than the advertised price, (b) they paid more money than Defendants' advertised price based on Defendants' misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV
### Breach of Express Warranty

74.     Plaintiffs Smorowski and Lenhart hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

75.     Plaintiffs Smorowski and Lenhart brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

76.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the advertised price of the Products was accurate.

77.    Defendants' express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class regarding the price of the Products, became part of the basis of the bargain between Defendants and Plaintiffs and the Class, thereby creating an express warranty that the price of the Products would conform to those affirmations of fact, representations, promises, and descriptions.

78.    The price of the Products does not conform to the express warranty because Defendants charged Plaintiffs and similarly situated Class Members more than the advertised price.

79.    As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the price; (b) they paid a substantial price premium based on Defendants' express warranties; and (c) the price of the Products do not have the characteristics, uses, or benefits as promised.

80.    On September 1, 2020 Plaintiff Smorowski mailed letters to Defendants consistent with Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A), on February 9, 2021 Lenhart mailed letters to Defendants consistent with Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A), and Defendants received those letters.    The letters were sent on behalf of Smorowski and all other persons similarly situated.

## COUNT V

### Unjust Enrichment

81.    Plaintiffs Smorowski and Lenhart hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

82.    Plaintiffs Smorowski and Lenhart brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

83.     Plaintiffs Smorowski and Lenhart and Class Members conferred benefits on Defendants by purchasing the Products.

84.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the price of the Products, which did not conform to its advertising, which caused injuries to Plaintiffs and members of the classes because they would not have purchased the Products on the same terms if the true facts had been known.

85.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

## COUNT VI
### Fraud

86.     Plaintiffs Smorowski and Lenhart hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

87.     Plaintiffs Smorowski and Lenhart brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

88.     As discussed above, Defendants provided Plaintiffs and Class Members with false or misleading material information about the Products by representing that Defendants would sell the advertised Products at a certain price i.e. $5.99 per item under the terms of the Mix and Match deal. Defendants made that misrepresentation to Plaintiffs and Class Members knowing it was false.

89.     Defendants' misrepresentations, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products.

90.     Defendants' fraudulent actions harmed Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class and California Subclass as follows:

A.     For an order certifying the nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as Class and Subclass representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class and Subclass members;

B.     For an order finding in favor of Plaintiffs, the nationwide Class, the California Subclass, on all counts asserted herein;

C.     For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.     For injunctive relief enjoining the illegal acts detailed herein;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For an order awarding Plaintiffs their reasonable attorneys' fees and expenses and costs of suit.

///

///

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 15, 2021          Respectfully submitted,


**RIGHETTI GLUGOSKI, P.C.**

By:_____ */s/ John Glugoski*
          John Glugoski

John Glugoski, Esq. (SBN 191551)
jglugoski@righettilaw.com
220 Halleck, Suite 220
San Francisco, CA 94129
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
jglugoski@righettilaw.com


**NATHAN & ASSOCIATES, APC**

By:_____ */s/ Reuben D. Nathan*_____
          Reuben D. Nathan

Reuben D. Nathan (State Bar No. 208436)
2901 W. Coast Hwy., Suite 200
Newport Beach, California 92660
Telephone: (949) 270-2798
Facsimile:  (949) 209-0303
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiffs*