**SPERTUS LANDES & UMHOFER LLP**
Matthew Donald Umhofer (#206607)
mumhofer@spertuslaw.com
Elizabeth A. Mitchell (#251139)
emitchell@spertuslaw.com
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700

**WILLIAMS & CONNOLLY LLP**
Edward C. Barnidge (*pro hac vice*)
ebarnidge@wc.com
David M. Horniak (#268441)
dhorniak@wc.com
Matthew W. Lachman (*pro hac vice*)
mlachman@wc.com
725 Twelfth Street, N.W.
Washington, DC 20005-5901
Telephone: (202) 434-5000

*Attorneys for Defendants Domino's Pizza
LLC and Domino's Pizza, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF SMOROWSKI and DANIEL LENHART, on behalf of themselves and all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>DOMINO'S PIZZA LLC; DOMINO'S PIZZA, INC.; and DOES 1 through 25, inclusive,<br><br>Defendants. | Civil Action No. 2:20-cv-10739-MWF-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing: May 10, 2021<br>Time: 10:00 a.m.<br>Place: Courtroom 5A<br>Before: Hon. Michael W. Fitzgerald |

## NOTICE OF MOTION AND MOTION

NOTICE IS HEREBY GIVEN that on May 10, 2021, at 10:00 a.m., or as soon thereafter as counsel may be heard, before The Honorable Michael W. Fitzgerald, in Courtroom 5A, located at 350 West First Street, Los Angeles, California 90012, Defendants Domino's Pizza LLC and Domino's Pizza, Inc. (collectively, "Domino's") will and hereby do move this Court to compel this action to arbitration, or alternatively to dismiss the claims asserted in the First Amended Complaint filed in this action on February 18, 2021, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(2).  This motion is made following conferences of counsel pursuant to L.R. 7-3, which took place most recently on March 8, 2021.  The motion is based upon this notice of motion and the following memorandum of points and authorities, any reply memorandum, the proposed order submitted herewith, the record in this action, and upon such other matters as may be presented to the Court at or before the time of the hearing.

## RELIEF REQUESTED

By this motion, Domino's requests an order pursuant to the parties' contractual agreement compelling this dispute to arbitration, or alternatively, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(2), to dismiss the complaint and each and every claim asserted in the complaint.

i

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

1    Dated:  March 15, 2021      By:    */s/ Matthew Donald Umhofer*

2

3            **SPERTUS LANDES & UMHOFER LLP**
             Matthew Donald Umhofer (#206607)
             matthew@spertuslaw.com
4            Elizabeth A. Mitchell (#251139)
             emitchell@spertuslaw.com
5            1990 S. Bundy Drive, Suite 705
             Los Angeles, CA 90025
             Telephone:  (310) 826-4700
6

7            **WILLIAMS & CONNOLLY LLP**
             Edward C. Barnidge (*pro hac vice*)
8            ebarnidge@wc.com
             David M. Horniak (#268441)
9            dhorniak@wc.com
             Matthew W. Lachman (*pro hac vice*)
10           mlachman@wc.com
             725 Twelfth Street, N.W.
11           Washington, DC 20005-5901
             Telephone:  (202) 434-5000

12

13           *Attorneys for Defendants Domino's Pizza LLC*
             *and Domino's Pizza, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................ I

RELIEF REQUESTED ......................................................................................... I

TABLE OF CONTENTS ....................................................................................III

TABLE OF AUTHORITIES ................................................................................V

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................2

    A.    Plaintiffs' Bare Bones Allegations About Their Mix & Match Orders. ........................................................................................2

    B.    Plaintiffs' Allegations Regarding Domino's Website. ...........................3

    C.    Plaintiffs' Agreement to Arbitrate on an Individual Basis. ....................4

LEGAL STANDARD ............................................................................................5

ARGUMENT ........................................................................................................6

I.    THE COURT SHOULD ENFORCE THE ARBITRATION AGREEMENT. ...............................................................................................6

    A.    Plaintiffs Entered into an Arbitration Agreement with Domino's. ...........6

    B.    The Arbitration Agreement Clearly and Unmistakably Requires Arbitration of Any Scope or Validity Objections. ...................................9

    C.    Even if the Court Were To Decide Scope, the Arbitration Agreement Encompasses Plaintiffs' Claims. ...........................................10

    D.    Even if the Court Were To Decide Validity, Plaintiffs' Class-Arbitration Waiver Is Valid and Requires Arbitration on an Individual Basis. ...................................................................................12

    E.    The Case Should Be Stayed Pending Arbitration. ................................13

II.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THIS ACTION. ........................................................................................................13

iii

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND
MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    A.    Plaintiffs' Amended Complaint Lacks the Specificity Required by Rule 9(b)........................................................................................13

          1.    Rule 9(b) Applies to All of Plaintiffs' Claims...............................13

          2.    Plaintiffs' Allegations Fail To Satisfy Rule 9(b)..........................14

    B.    This Court Lacks Personal Jurisdiction To Adjudicate Claims on Behalf of a Nationwide Class...................................................................17

CONCLUSION.........................................................................................................20

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

# TABLE OF AUTHORITIES

## CASES

*Aliff v. Vervent, Inc.*,
   2020 WL 5709197 (S.D. Cal. Sept. 24, 2020)....................................................10

*Arabian v. Organic Candy Factory*,
   2018 WL 1406608 (C.D. Cal. Mar. 19, 2018)....................................................14

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)............................................................................................9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..........................................................................................13

*Ayeni-Aarons v. Best Buy Credit Servs./CBNA*,
   2019 WL 3943864 (E.D. Cal. Aug. 21, 2019)......................................................5

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ..........................................................................17

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ..........................................................................10

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017).................................................................................19, 20

*Buckley v. BMW N. Am.*,
   2020 WL 3802905 (C.D. Cal. Mar. 9, 2020)......................................................16

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..........................................................................................20

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
   647 F.3d 914 (9th Cir. 2011) ............................................................................11

*Carpenter v. PetSmart, Inc.*,
   441 F. Supp. 3d 1028 (S.D. Cal. 2020).........................................................19, 20

*Chase v. Hobby Lobby Stores, Inc.*,
   2017 WL 4358146 (S.D. Cal. Oct. 2, 2017)........................................................16

*Cohen v. Ainsworth Pet Nutrition, LLC*,
   2020 WL 7250329 (C.D. Cal. Oct. 26, 2020) .....................................................15

v

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND
MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020) ...................................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...................................................................................5

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) .............................................................6, 14

*Fagerstrom v. Amazon.com, Inc.*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015)....................................................8

*Ferguson v. Corinthian Colls., Inc.*,
   733 F.3d 928 (9th Cir. 2013) .................................................................11

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)................................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................18

*Gross v. Symantec Corp.*,
   2012 WL 3116158 (N.D. Cal. July 31, 2012) ......................................14

*Guadagno v. E*Trade Bank*,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ..................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)................................................................................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)................................................................................9

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016)...................................................7

*In re iPhone 4S Consumer Litig.*,
   2013 WL 3829653 (N.D. Cal. July 23, 2013) ......................................15

*Inga v. Bellacor.com, Inc.*,
   2020 WL 5769080 (C.D. Cal. July 17, 2020)........................................14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................13, 14, 15

vi

*Knutson v. Sirius XM Radio, Inc.*,
   771 F.3d 559 (9th Cir. 2014) ...................................................................7

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .................................................................5

*Lakhan v. U.S. Sec. Assocs., Inc.*,
   2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ..........................................10

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019)............................................................................12

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) .........................................................8, 9

*Leonard v. Equitable Life Assurance Soc'y of the U.S.*,
   28 F. App'x 686 (9th Cir. 2002) ...........................................................11

*Miller v. Time Warner Cable Inc.*,
   2016 WL 7471302 (C.D. Cal. Dec. 27, 2016).......................................10

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ...............................................................10

*Molock v. Whole Foods Mkt. Grp., Inc.*,
   952 F.3d 293 (D.C. Cir. 2020)...............................................................19

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) .................................................................13

*Moonpath Enters. Ltd. v. Joint Stock Holding Co. Dalmoreproduct*,
   92 F. App'x 388 (9th Cir. 2003) ...........................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).....................................................................................11

*Mussat v. IQVIA, Inc.*,
   953 F.3d 441 (7th Cir. 2020) .................................................................19

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .................................................................7

*Rael v. New York & Co., Inc.*,
   2016 WL 7655247 (S.D. Cal. Dec. 28, 2016) .......................................15

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ........................................................................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010).............................................................................................9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ........................................................................15

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ........................................................................18

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020) ........................................................................12

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ..........................................................................11

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..........................................................................16

*Ticketmaster LLC v. RMG Techs., Inc.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..........................................................8

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ....................................................................6, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................................20

*Wenokur v. AXA Equitable Life Ins. Co.*,
  2017 WL 4357916 (D. Ariz. Oct. 2, 2017).....................................................20

*Williams v. Beechnut Nutrition Corp.*,
  229 Cal. Rptr. 605 (Ct. App. 1986) ................................................................14

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) ..........................................................................7

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017).................................................................8, 9

## STATUTES AND RULES

9 U.S.C. § 3 .........................................................................................................13

28 U.S.C. § 2072(b) ................................................................20

Fed. R. Civ. P. 9(b) ........................................................passim

Fed. R. Civ. P. 12(b)(2)...........................................................17

Fed. R. Civ. P. 23 ..................................................................20

**OTHER AUTHORITIES**

5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1296 (4th ed.)..................................................................................6

# INTRODUCTION

Plaintiffs Jeff Smorowski and Daniel Lenhart should be required to honor the arbitration agreement they entered into with Defendants Domino's Pizza LLC and Domino's Pizza, Inc. (collectively, "Domino's").  This case began with a set of made-for-litigation pizza orders placed by Plaintiff Smorowski.  On the same day, he made apparently identical orders directly at four separate Domino's franchisee stores under Domino's Mix & Match promotion.  But, when placing orders on Domino's website on numerous occasions previously, Smorowski agreed to arbitrate disputes with Domino's. His agreement to arbitrate encompasses the purchases at issue here.

When we informed Smorowski's counsel of his obligation to arbitrate, they amended the complaint to add a new plaintiff, Lenhart, whom they allege "has never made a purchase of any item through Domino's website."  Am. Compl. ¶ 25.  It appears that allegation is false, however.  Domino's records show that a Daniel Lenhart from the same town also placed orders on Domino's website and therefore also agreed to arbitrate his claims.

Accordingly, Domino's hereby moves to compel Plaintiffs to arbitrate their claims.  Plaintiffs entered into a broad online arbitration agreement that requires them to arbitrate not only their claims, but also issues of arbitrability.  Pursuant to that agreement, which is valid under controlling Ninth Circuit precedent, the Court should refer this matter to arbitration and stay all proceedings, without regard to Plaintiffs' failure to plead an actionable claim.

In the alternative, this Court should dismiss Plaintiffs' complaint for failure to meet federal pleading requirements.  The amended complaint sounds in fraud but fails to satisfy the requirements of Federal Rule of Civil Procedure 9(b).  It does not identify the advertisements Plaintiffs allegedly saw or heard, what disclaimers accompanied those advertisements, or who made the alleged statements.  Plaintiffs' failure to provide specifics appears an attempt to avoid the numerous warnings in Domino's promotional materials about potential upcharges by the stores on items, crusts, and toppings.

## BACKGROUND

### A.    Plaintiffs' Bare Bones Allegations About Their Mix & Match Orders.

Plaintiff Jeff Smorowski alleges that on August 19, 2020, he purchased "Two Medium Regular Pizzas and a Sweet BBQ Bacon Chicken Sandwich" using Domino's "Mix and Match" promotion.  Am. Compl. ¶ 24.[1]  He does not identify the toppings, if any, on his pizzas.  *Id.*

Plaintiff Daniel Lenhart alleges that he made purchases at unidentified "locations near and around his home in Arcadia and West Covina" between 2017 and 2019, including on September 26, 2019.  *Id.* ¶ 25.  He alleges his September 26, 2019, purchase included "Two Medium Regular Pizzas."  *Id.*  He does not identify the toppings, if any, on those pizzas.  *Id.*  Nor does he include any information about items allegedly ordered on other dates, or how much he paid for his alleged orders.  *Id.*

Plaintiffs further allege that, when they placed their orders, they saw and read the following representations:  "MIX & MATCH DEAL," "CHOOSE ANY TWO OR MORE," and "$5.99 each."  *Id.* ¶ 26.  The amended complaint does not allege where, when, or by whom these representations were made.  According to Plaintiffs, they understood these representations to mean that they would be charged a flat price of $5.99 for each item ordered.  *Id.*  Plaintiffs allege that, notwithstanding those representations, the Domino's stores they visited charged more than $5.99 per item.  *Id.* ¶¶ 24–25.  Plaintiffs therefore allege that Domino's misled them by advertising a $5.99 price for its Mix & Match deal.  *Id.* ¶ 27.

---

[1] In his original complaint (Dkt. No. 1), Smorowski alleges that on the same day he placed an order at a Domino's store in Seal Beach, he placed similar, if not the same, orders at three other Domino's stores in California, spread across at least twenty miles: Stanton; Westminster; and Whittier.  Compl. ¶¶ 23–26.  At the time Smorowski placed his four evidently identical orders at four different stores on the same day in August 2020, he was being represented by his counsel in another putative class action.  *See Smorowski v. BDS Marketing, Channel Partners*, 30-2017-00922481 (The Superior Court of California, County of Orange) (wage-and-hour class action brought by Smorowski against his former employer).

2

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

Plaintiffs' complaint, however, is missing key details to support these allegations. The Mix & Match deal does not apply to all items, and certain items carry an additional charge. Domino's discloses this information in its advertising for the Mix & Match Deal and at various stages during the ordering process, as illustrated by the disclaimer visible in some of the "[e]xample" images in the amended complaint. *See id.* ¶ 7 ("2-item minimum. Handmade Pan Pizzas, Bread Bowl Pasta, and Bone-In Wings will be extra."). Plaintiff Smorowski's original complaint contained a screenshot with another one of Domino's disclaimers, that "[s]ome crust types, toppings, sauces, and premium items *may come with an additional charge*," but Plaintiffs deleted this image when they amended their complaint after meeting and conferring with Defendants' counsel. Compl. ¶ 11 (emphasis added). Plaintiffs do not identify what advertising they saw, where they saw it, whether it contained any of these disclaimers, or whether they saw any of the disclaimers. Plaintiffs also omit how they made their orders, be it in-person, by phone, or through the Domino's website or app, as well as what, if anything, was communicated to them about the deal when they placed their orders. Plaintiff Lenhart also does not disclose the stores he ordered from.

## B.   Plaintiffs' Allegations Regarding Domino's Website.

Plaintiffs' amended complaint extensively relies on Domino's website as the source of the allegedly deceptive Mix & Match disclosures. *See, e.g.*, Am. Compl. ¶¶ 1, 3, 4, 7, 12, 14. The amended complaint contains two screenshots that appear to come from Domino's website, showing parts of advertisements for the Mix & Match deal. *Id.* ¶ 7. It is not clear when these screenshots were taken—the complaint does not specify the precise date, although it does allege that the screenshots are an "[e]xample of Domino's' Mix & Match deal." *Id.* ¶ 7. Plaintiffs allege these exemplars are part of a "uniform, consistent, distributed, [and] patterned" Mix & Match deal advertising campaign. *Id.* ¶ 8. Plaintiffs' descriptions of representations Domino's has allegedly made regarding the Mix & Match deal also appear to rely largely, if not entirely, on website advertisements. *See id.* ¶¶ 9–10.

### C.     Plaintiffs' Agreement to Arbitrate on an Individual Basis.

In the weeks preceding the four orders he placed at the franchisee stores on August 19, 2020, Plaintiff Smorowski repeatedly placed online orders using Domino's website.  For example, according to Domino's records, he ordered two medium pizzas and Sweet BBQ Bacon (a 12-bites specialty chicken item) each day on August 7, 13, 14, 16, and 17.  Decl. of Jason McMann ("McMann Decl.") ¶ 6.  Unlike Smorowski, Plaintiff Lenhart alleges that he "has never made a purchase of any item through Domino's website."  Am. Compl. ¶ 25.  But Domino's records reflect a series of online orders from 2017 to present by a Daniel Lenhart in West Covina and Arcadia, California.  McMann Decl. ¶ 7.[2]

When placing an online order, a Domino's customer expressly agrees to the "Terms of Use," an online contract whose terms are posted on Domino's website and app.  *Id.* ¶ 9.  A hyperlink to the Terms of Use is located directly below the "PLACE YOUR ORDER" button in a different color font, as depicted below:



*Id.* ¶¶ 9–10 & Ex. A.  This puts a user on notice that by placing an order, the user assents to the Terms of Use.

The Terms of Use agreed to by the customer expressly state they constitute "an ongoing contract between you and Domino's Pizza and apply to your use of the Websites or Applications."  *Id.*, Ex. B at 1.  The terms are bilateral, encumbering

---

[2] We met and conferred with Plaintiffs' counsel on March 8, 2021, and asked them to provide us with Lenhart's address and phone number, which would enable us to confirm that Plaintiff Lenhart is the same individual who placed these orders.  Plaintiffs have not provided this information to date.  If Plaintiffs maintain that Lenhart did not previously place an online order, Domino's will seek discovery, and, if necessary, an evidentiary hearing, regarding Lenhart's use of the website or app to place orders.

4

Domino's too—for example, Domino's agrees to protect the privacy of the consumer's personal information provided through the website or apps. *Id.* As part of this "ongoing contract" with Domino's, the consumer agrees to a broad arbitration clause that includes disputes regarding the arbitrator's jurisdiction. Namely, the consumer agrees to arbitrate "any claim, dispute, and/or controversy arising out of or relating in any way to your use of the web sites or the applications, any products sold by Domino's Pizza through the websites or the applications, these terms of use, or the scope or validity of this Arbitration Agreement." *Id.*, Ex. B at 6. The binding arbitration "will be conducted only on an individual basis, and not on a class-wide, collective, multiple-party, or private attorney general basis." *Id.*, Ex. B at 7.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). There is no question the FAA applies here. The parties' arbitration agreement specifies application of the FAA, McMann Decl., Ex. B at 6, and Plaintiffs allege the Terms of Use are between citizens of different states, *see, e.g.*, Am. Compl. ¶¶ 22, 28–29 (alleging Plaintiffs are California citizens and Defendants are citizens of Delaware and Michigan); *Ayeni-Aarons v. Best Buy Credit Servs./CBNA*, 2019 WL 3943864, at *2 (E.D. Cal. Aug. 21, 2019) (interstate commerce requirement satisfied where contract containing the arbitration agreement was between citizens of different states). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

When a party alleges fraud, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requirement "is especially persuasive" in a case like this one, where "the defendant is a business entity that engages in a high

5

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT OR
MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

volume of transactions and might have difficulty in identifying the one that is being challenged." 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1296 (4th ed.). Pleading with particularity means the plaintiff "must 'identify the who, what, when, where, and how of the misconduct charged.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013), *cert. denied*, 140 S. Ct. 223 (2019)). This requires more than just "the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Decker v. Glenfed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

## ARGUMENT

## I.   The Court Should Enforce the Arbitration Agreement.

Because the parties clearly and unmistakably agreed to arbitrate questions of arbitrability, the Court's role here is straightforward. Upon determining that Plaintiffs entered into the arbitration agreement, it must refer any remaining questions involving the validity and scope of the arbitration agreement to the arbitrator to decide. Plaintiffs entered into an arbitration agreement with Domino's when they placed numerous orders on Domino's website, thereby consenting to the Terms of Use, including the arbitration clause. As a result, the arbitrator must decide whether the arbitration agreement encompasses Plaintiffs' claims, as well as any challenges to the arbitration agreement's provisions.

### A.   Plaintiffs Entered into an Arbitration Agreement with Domino's.

Plaintiffs assented to the arbitration agreement when they placed orders on Domino's website, thereby acknowledging they were agreeing to the ongoing Terms of Use. The line directly underneath the "PLACE YOUR ORDER" button could not make the consequences of clicking the button any clearer: "By placing your order you agree to our Terms of Use…" McMann Decl. ¶¶ 10–11 & Ex. A.

6

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

In evaluating assent, courts "'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under California law, "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In online agreements, mutual assent is determined by whether the consumer had reasonable notice of the terms of the agreement. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (citing *Nguyen*, 763 F.3d at 1177). Even "in the absence of actual knowledge," an agreement is valid if "a reasonably prudent user [would] be on constructive notice of the terms of the contract." *Id.* at 1220.

In assessing online contracts, courts have distinguished between "clickwrap" and "browsewrap" agreements. A "clickwrap" agreement requires a user "[to] click on an 'I agree' box after being presented with a list of the terms and conditions of use," whereas a "browsewrap" agreement posts "a website's terms and conditions of use . . . via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1176 (citation omitted). Clickwrap agreements carry a higher likelihood of enforceability. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164–65 (N.D. Cal. 2016) ("[O]ur Circuit has settled on an analytical framework that puts 'clickwrap' agreements at one end of the enforceability spectrum and 'browsewrap' agreements at the other."). Courts also commonly enforce a hybrid form of agreement such as the one here—where, unlike a clickwrap agreement, users are *not* required to click a separate box indicating that they agree to terms, but, unlike a browsewrap agreement, users *are* required "to affirmatively acknowledge the agreement before proceeding" or are greeted with "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Nguyen*, 763 F.3d at 1177.

For example, the Ninth Circuit recently held a consumer "validly assented to Ticketmaster's Terms of Use, including the arbitration provision" in a hybrid

7

1   agreement.  *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).  The
2   website there warned users via text positioned "three lines below" a button on a sign-in
3   screen that, "'By continuing past this page, you agree to our Terms of Use,' . . . ." *Id.*
4   (citation omitted).  Even though this sign-in process did not create a "true pure-form
5   clickwrap agreement as California courts have construed it (because Ticketmaster does
6   not require users to click a separate box indicating that they agree to its Terms)," it
7   nonetheless "provided sufficient notice for constructive assent," thus creating "a
8   binding arbitration agreement." *Id.*

9           The Ninth Circuit similarly affirmed the validity of another hybrid agreement in
10  *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017).  There, the online
11  checkout page contained an order button accompanied by a blue-hyperlinked warning
12  at the top of the page that, "'By placing your order, you agree to Amazon.com's privacy
13  notice and conditions of use.'" *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051,
14  1057–58 (S.D. Cal. 2015) (alteration and citation omitted), *aff'd sub nom. Wiseley v.*
15  *Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017).  The Ninth Circuit held this
16  warning "that clicking the corresponding action button constituted agreement to the
17  hyperlinked [conditions]" was "in sufficient proximity to give [the consumer] a
18  'reasonable opportunity to understand' that he would be bound by additional terms."
19  *Wiseley*, 709 F. App'x at 864 (citation omitted).[3]

20

21  [3] *Accord Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) ("In
22  the instant case, a highlighted, underlined link to the Agreement was directly above the
23  acknowledgment box, along with notice that 'The following contain important
24  information about your account(s).' A reasonably prudent offeree would have noticed
    the link and reviewed the terms before clicking on the acknowledgment icon." (citation
25  omitted)); *Ticketmaster LLC v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D.
26  Cal. 2007) (Plaintiff was "highly likely to succeed in showing that Defendant received
    notice of the Terms of Use and assented to them by actually using the website" where
27  site displayed a warning that "Use of this website is subject to express Terms of Use "
    and "[t]he underlined phrase 'Terms of Use' is a hyperlink to the full Terms of Use."
28  (citation omitted)).

8

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND
MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

The Domino's Terms of Use agreement is a hybrid agreement like those deemed valid in *Lee* and *Wiseley*, except the disclosure is even more conspicuous.  In *Lee*, the terms-of-use disclosures were three lines below a sign-in button, 2020 WL 3124256, at \*2, and in *Wiseley*, they sat atop an order page separated from the sign-in button, 709 F. App'x at 864.  Domino's Terms of Use, in contrast, are disclosed on the line *immediately beneath* the order button.  *See supra* p. 4.  Domino's disclosure is easily understood, its text is darker than the background, and its hyperlink to the Terms of Use stands out in blue font.  The disclosure puts a reasonable person on notice that he or she agrees to the Terms of Use by placing an order, and that he or she should click the link to read the terms before consummating the order.  Notably, Plaintiffs are relying on the precise content of the Mix & Match disclosures on Domino's website as the basis for their liability arguments; they cannot at the same time deny that they had constructive notice of the arbitration terms clearly disclosed on the website.

By placing online orders, Plaintiffs assented to the arbitration agreement contained in Domino's Terms of Use.

**B.  The Arbitration Agreement Clearly and Unmistakably Requires Arbitration of Any Scope or Validity Objections.**

Upon confirming Plaintiffs' assent to the arbitration agreement, the Court should refer any other questions pertaining to the validity or scope of the arbitration agreement to arbitration.  It is well-settled that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citation omitted).  The test is whether the parties "clearly and unmistakably" did so. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986).  If so, "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The parties here clearly and unmistakably agreed for the arbitrator to decide arbitrability, expressly agreeing to arbitrate "any claim, dispute, and/or controversy

arising out of or relating in any way to . . . the scope or validity of this arbitration agreement." McMann Decl., Ex. B at 6. The Ninth Circuit has held that such language "'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). District courts have held similar language confers power on the arbitrator, rather than the court, to decide arbitrability. *See, e.g., Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL 175043, at *6 (C.D. Cal. Jan. 11, 2019) (referring arbitrability to arbitrator where agreement provided the arbitrator with exclusive authority to determine any issue relating to "the interpretation, formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement" (alteration and citation omitted)); *Aliff v. Vervent, Inc.*, 2020 WL 5709197, at *5 (S.D. Cal. Sept. 24, 2020) (arbitration should decide arbitrability where parties agreed to arbitrate "any dispute over the validity of this arbitration provision" (citation omitted)).[4] The Court should refer any scope or validity questions here to the arbitrator.

## C. Even if the Court Were To Decide Scope, the Arbitration Agreement Encompasses Plaintiffs' Claims.

Even if the parties had agreed for the Court to resolve whether the agreement encompasses Plaintiffs' claims, the agreement clearly does. "[T]he scope of an arbitration agreement is a matter of contract." *Ferguson v. Corinthian Colls., Inc.*, 733

---

[4] The parties here further manifested their intent to arbitrate arbitrability by specifically incorporating AAA's Consumer Arbitration Rules and Supplementary Procedures for Consumer-Related Disputes, which empower the arbitrator to decide arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (incorporating AAA's rules "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (extending *Opus Bank* to consumer setting; "the greater weight of authority has concluded that the holding of *Opus Bank* applies similarly to non-sophisticated parties").

10

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

F.3d 928, 937 (9th Cir. 2013).  In keeping with the FAA's "liberal federal policy favoring arbitration agreements," the Supreme Court mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see Leonard v. Equitable Life Assurance Soc'y of the U.S.*, 28 F. App'x 686, 687 (9th Cir. 2002).

The scope of the arbitration agreement here is broad.  Plaintiffs agreed to arbitrate, against "Domino's Pizza, Inc. and its affiliates and franchisees,"[5] "any claim, dispute, and/or controversy arising out of or relating in any way to your use of the web sites or the applications, any products sold by Domino's Pizza through the websites or the applications, these terms of use, or the scope or validity of this Arbitration Agreement."  McMann Decl., Ex. B at 6.  It is well-established that "relating to" arbitration clauses are broad in scope.  *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (citation omitted); *see Moonpath Enters. Ltd. v. Joint Stock Holding Co. Dalmoreproduct*, 92 F. App'x 388, 389 (9th Cir. 2003) ("When inclusive phrasing such as 'issues arising hereunder' or 'in connection herewith' is used, 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute' should be sent to arbitration.") (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999)).  "To require arbitration, [Plaintiffs'] factual allegations need only 'touch matters' covered by the contract."  *See, e.g.*, *Simula*, 175 F.3d at 721 (citation omitted).

Plaintiffs' allegations are encompassed by the arbitration agreement for two independent reasons.

*First*, Plaintiffs base their claims on disclosures made on Domino's website— indeed, the amended complaint expressly includes excerpts from the website as examples of the "offer" at issue.  *See* Am. Compl. ¶¶ 4–12.  As Plaintiffs rely on the

---

[5] Defendant Domino's Pizza LLC is an "affiliate" of Domino's Pizza, Inc.  McMann Decl. ¶ 3.

11

online disclosures as purportedly deceptive statements, the claims clearly "arise" out of the use of the website.  Likewise, as the resolution of Plaintiffs' claims requires construing the meaning of the online disclosures, the claims plainly relate "in any way" to the use of the website.

*Second*, Plaintiffs' claims involve "products sold by Domino's Pizza through the websites or the applications."  McMann Decl., Ex. B at 6.  Plaintiffs claim that each of the items purchased—to the extent they are disclosed—were available for sale on Domino's website.  Am. Compl. ¶¶ 13–14.  Indeed, Plaintiffs have purchased those items multiple times on Domino's website.  McMann Decl. ¶¶ 6–7.  In so doing, Plaintiffs agreed to arbitrate any claims regarding the purchase of such products.

Thus, even if the Court were to determine the scope of the arbitration agreement here, Plaintiffs' claims fall squarely within its ambit.

### D.   Even if the Court Were To Decide Validity, Plaintiffs' Class-Arbitration Waiver Is Valid and Requires Arbitration on an Individual Basis.

Likewise, even if the Court were to decide whether Plaintiffs can pursue a class arbitration, they clearly cannot.  A class arbitration is permissible only if the defendant expressly agrees to one. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1069 (9th Cir. 2020) ("As the district court concluded, because the Agreements are silent on class arbitration, they do not permit it.").  "Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019), namely, "the individualized form of arbitration envisioned by the FAA," *id.* at 1416.  Rather than an express agreement to arbitrate on a classwide basis, Plaintiffs and Domino's here entered into an agreement not to do so, contracting to arbitrate only on an individual basis.  McMann Decl., Ex. B. at 7.  It is well-settled that such a class-arbitration waiver in a consumer contract is enforceable.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  Accordingly, any arbitration must proceed on an individual basis.

**E.     The Case Should Be Stayed Pending Arbitration.**

As this matter should be referred to arbitration, the FAA directs that a stay of proceedings be entered "until such arbitration has been had."  9 U.S.C. § 3; *see Momot*, 652 F.3d at 986.

**II.     In the Alternative, the Court Should Dismiss This Action.**

**A.     Plaintiffs' Amended Complaint Lacks the Specificity Required by Rule 9(b).**

Even if this matter were not subject to arbitration, Plaintiffs' allegations of a fraudulent course of conduct lack the specificity required by the Federal Rules of Civil Procedure.  Rule 9(b) requires Plaintiffs to plead all six claims in the amended complaint with particularity because they rely on a single, unified course of allegedly fraudulent conduct.  Plaintiffs instead plead bits and pieces of the transaction, thereby precluding the Court and Domino's from isolating the pertinent disclosures at issue, much less assessing whether Plaintiffs can state a claim based on such disclosures.  Because none of Plaintiffs' claims satisfy Rule 9(b), they all must be dismissed.

**1.     Rule 9(b) Applies to All of Plaintiffs' Claims.**

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). Even "where fraud is not a necessary element of a claim," a claim must still satisfy Rule 9(b) if the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Courts in the Ninth Circuit have held that Rule 9(b) applies to all of the causes of action in Plaintiffs' amended complaint when they rely on allegedly fraudulent conduct as the basis for the claim.  *See, e.g.*, *Kearns*, 567 F.3d at 1125 (applying 9(b) to UCL and CLRA claims); *Inga v. Bellacor.com, Inc.*, 2020 WL 5769080, at *2 (C.D. Cal. July 17, 2020) (UCL, FAL, and CLRA); *Arabian v. Organic*

1   *Candy Factory*, 2018 WL 1406608, at \*4 (C.D. Cal. Mar. 19, 2018) (ten claims,

2   including breach of warranty, unjust enrichment, UCL, FAL, and CLRA).

3   Plaintiffs' amended complaint indisputably alleges a unified course of fraudulent

4   conduct: that Domino's advertises one price for items subject to its Mix & Match Deal,

5   but supposedly charges another. Am. Compl. ¶ 8 ("Plaintiffs allege on information and

6   belief that Domino's advertisements regarding its Mix & Match are uniform, consistent,

7   distributed, patterned, and is to be equally applied the same . . . ."); *id.* ¶ 16 (alleging

8   that "Domino's has a pattern and practice of charging its consumers an amount

9   exceeding \$5.99 per product" and that Domino's "statements relating to the \$5.99 price

10  per product pursuant to the Mix & Match deal is false and/or misleading"). Plaintiffs

11  base all six of their claims on these alleged misrepresentations. *See id.* ¶¶ 57–58 (Count

12  I), 65–66 (Count II), 71 (Count III), 77–78 (Count IV), 84 (Count V), 88 (Count VI).

13  Thus, Plaintiffs must satisfy Rule 9(b) with regard to all six claims.[6]

14  ## 2.    Plaintiffs' Allegations Fail To Satisfy Rule 9(b).

15  Rule 9(b) requires a plaintiff to plead "the who, what, when, where, and how of

16  the misconduct charged." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668

17  (9th Cir. 2019) (citation omitted). Despite already twice amending the complaint—first

18  through a December 2, 2020 "errata," Dkt. No. 10-1, and then through the instant "First

19  Amended Complaint"—Plaintiffs' vague allegations lack most of these particulars. In

20  fact, the amended complaint contains even less detail than the original complaint did.

21  First, the amended complaint lacks the necessary details about *how* Domino's

22  allegedly committed fraud. "[T]he pleader must state the time, place, and specific

23  ---

24  [6] In addition to Rule 9(b), California law independently requires that, when pleading breach of express warranty, the plaintiff "allege the exact terms of the warranty."

25  *Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608 (Ct. App. 1986). This requirement has been held to be "coextensive" with the requirements of Rule 9(b).

26  *Gross v. Symantec Corp.*, 2012 WL 3116158, at \*10 (N.D. Cal. July 31, 2012). Thus, even if Rule 9(b) did not apply by its own terms to Plaintiffs' breach of warranty claim,

27  Plaintiffs would still need to satisfy Rule 9(b)'s requirements in order to state a claim under California law.

28

content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). It must also state the "context surrounding when, where, and how [the plaintiff] encountered the purported misrepresentations." *Cohen v. Ainsworth Pet Nutrition, LLC*, 2020 WL 7250329, at *5 (C.D. Cal. Oct. 26, 2020).

Plaintiffs have failed to provide this information. Plaintiffs allege that they "saw and read the representations, 'MIX & MATCH DEAL,' 'CHOOSE ANY TWO OR MORE,' for '$5.99 each.'" Am. Compl. ¶ 26. But they do not allege when or where they saw those representations, nor do they provide the full contents of the advertisement(s) that allegedly made these representations. The amended complaint contains two screenshots that appear to come from Domino's website (neither of which captures the full screen), and a third graphic of unknown origin, which it refers to as an "Example" of the Mix & Match deal. *Id.* ¶ 7. It does not say when those screenshots were taken, whether Domino's (as opposed to an individual franchisee, for example) was responsible for the screenshots' content, or whether Plaintiffs even saw those particular advertisements—let alone relied on them—before placing their orders. These missing details are required by Rule 9(b). *See Kearns*, 567 F.3d at 1126 (affirming 9(b) dismissal because plaintiff failed to "specify what the television advertisements or other sales material [he relied upon] specifically stated" or "specify which sales material he relied upon in making his decision"); *Rael v. New York & Co., Inc.*, 2016 WL 7655247, at *6 (S.D. Cal. Dec. 28, 2016) (dismissing under 9(b) where plaintiff failed to "give details as to what signs she relied on, what the signs said or looked like, or where they were located"); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *15 (N.D. Cal. July 23, 2013) (dismissing express warranty claim because plaintiffs "failed to allege the exact terms of any warranty," including "which particular commercials and webpages they each relied upon").

Plaintiffs' omissions are particularly problematic here because Domino's Mix & Match Deal advertisements contain disclaimers that Plaintiffs have conspicuously failed

15

to discuss in their amended complaint.  In the original complaint, Smorowski included a screenshot with an example of a disclaimer, which informed purchasers that "[s]ome crust types, toppings, sauces, and premium items may come with an additional charge." *See* Compl. ¶ 11 (image).  The amended complaint omits this screenshot.  Plaintiffs also do not indicate whether they saw Domino's disclaimers.  Plaintiffs' failure to mention these disclaimers or allege whether they saw them is another omission of facts necessary to meet the Rule 9(b) standard.  *See Chase v. Hobby Lobby Stores, Inc.*, 2017 WL 4358146, at *8 (S.D. Cal. Oct. 2, 2017) (dismissing complaint because plaintiff did "not plead whether or not she viewed any disclaimers on the advertisements or the details of the advertised disclosures").  Indeed, Defendants cannot even determine what specific disclaimers Plaintiffs might have been exposed to, because Plaintiffs have not identified the specific advertisements they saw.

Second, the amended complaint lacks the necessary details about *who* made the alleged representations.  Rule 9(b) requires the plaintiff to plead the "identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (citation omitted).  Domino's is a franchisor, and its stores in California are independently owned and operated by franchisees.  Who specifically made the alleged representations therefore matters for the purpose of assessing responsibility for those representations.  Even if Plaintiffs do not know the precise identity of the persons they spoke with, they certainly know whether the representations were made by a store employee, through a print advertisement, or on the website, and Rule 9(b) requires Plaintiffs to provide that information.  *See Buckley v. BMW N. Am.*, No. CV 19-1255-MWF-SS, 2020 WL 3802905, at *11 (C.D. Cal. Mar. 9, 2020) (dismissing under 9(b) for failing to provide sufficient information for defendant to identify employee who made alleged misrepresentations).

Third, the amended complaint lacks the necessary details about *why* the alleged representations are false.  Domino's exempts certain items from its Mix & Match deal, and its advertisements disclose that certain items "may come with an additional charge."

16

*See* Compl. ¶ 11 (image).   Smorowski alleges he purchased "Two Medium Regular Pizzas and a Sweet BBQ Bacon Chicken Sandwich."   Am. Compl. ¶ 24.[7]   The allegations concerning Lenhart's orders contain even less information, omitting any description of the items ordered, except for one order where Lenhart alleges he purchased "Two Medium Regular Pizzas."   *Id.* ¶ 25.   But, even as to pizzas, Plaintiffs do not allege how many toppings (if any) were on their pizzas, or what toppings they selected.   The number and types of toppings on a pizza can exempt it from the Mix & Match deal or result in additional charges.   *See* Am. Compl. ¶ 13.   By omitting this information, Plaintiffs have failed to meet Rule 9(b)'s requirement that they allege "why [the representation] is false."   *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted).

The Court should dismiss the amended complaint under Rule 9(b).

## B.     This Court Lacks Personal Jurisdiction To Adjudicate Claims on Behalf of a Nationwide Class.

Domino's also moves to dismiss Plaintiffs' nationwide class allegations for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).   As discussed below, recent decisions from the D.C. Circuit and the Fifth Circuit hold that personal jurisdiction with regard to absent class members is not ripe for adjudication until a class has been certified.   But the Ninth Circuit has not yet weighed in on this issue, and Domino's is therefore raising it now to avoid any risk of waiver.

Plaintiffs bear the burden of establishing one of the two types of personal jurisdiction: general jurisdiction or specific jurisdiction.   *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).   Neither form of jurisdiction exists here as to claims brought

---

[7] Domino's does not offer a menu item called "Sweet BBQ Bacon Chicken Sandwich." Moreover, sandwiches are not one of the specific items to which Plaintiffs allege the Mix & Match deal applies.   *See* Am. Compl. ¶ 13.   Smorowski similarly alleged the purchase of this sandwich in his original complaint, Compl. ¶¶ 23–26, but later filed a notice of errata stating that the item ordered was actually "Specialty Chicken Sweet BBQ Bacon."   Dkt. No. 10 at 3.   The amended complaint returns to the original allegation of a sandwich.   Am. Compl. ¶ 24.

1    on behalf of persons who did not view Domino's advertisements or purchase Domino's

2    products, using the Mix & Match Deal, in California.

3             – *General Jurisdiction:* General jurisdiction requires a defendant's contacts with

4    the state be "so 'continuous and systematic' as to render them essentially at home in the

5    forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

6    (2011) (citation omitted).  In almost all cases, general jurisdiction exists only where a

7    defendant is incorporated or where it has its principal place of business. *Ranza v. Nike,*

8    *Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).   Domino's Pizza, Inc. is a Delaware

9    corporation and Domino's Pizza LLC is a Michigan limited liability corporation.

10   McMann Decl. ¶¶ 2–3.  Both have their principal places of business in Ann Arbor,

11   Michigan.  *Id.*  Thus, this Court does not have general jurisdiction over Domino's.

12            – *Specific Jurisdiction:* Specific jurisdiction is only available if Plaintiffs' claims

13   "aris[e] out of or relate[] to the defendant's contacts with the forum." *Helicopteros*

14   *Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  Those contacts

15   must consist of an "activity or an occurrence that takes place in the forum State."

16   *Goodyear*, 564 U.S. at 919.  The contacts must be specific to the claim, as "specific

17   jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the

18   very controversy that establishes jurisdiction.'"  *Id.* (citation omitted).  Thus, "even

19   regularly occurring sales of a product in a State do not justify the exercise of jurisdiction

20   over a claim unrelated to those sales." *Id.* at 930 n.6.

21            Plaintiffs seek to certify a class consisting of "all persons *in the United States*

22   who purchased the Products through Defendants 'Mix and Match' deal during the class

23   period." Am. Compl. ¶ 43.  This includes, for example, people who have never seen a

24   Domino's advertisement in California, who have never purchased a Domino's product

25   in California, and who have never even set foot in California.  These individuals have

26   no connection to this forum, or to Plaintiffs' claims, that would justify the exercise of

27   specific jurisdiction in this case.  *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,

28   137 S. Ct. 1773, 1781 (2017) (holding that to "assert specific jurisdiction over the

18

nonresidents' claims . . . . [w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue").

In *Bristol-Myers*, the Supreme Court held, in a products liability mass-action, that the fact that non-California residents had identical claims to California residents was not sufficient to exercise specific personal jurisdiction over the non-California residents' claims, because "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 1782. Since the opinion in *Bristol Myers*, a number of district courts and three Courts of Appeals have grappled with whether and when to extend *Bristol-Myers* to class actions. The D.C. Circuit and the Fifth Circuit have held that a motion to dismiss for lack of personal jurisdiction under *Bristol-Myers* is premature until a class has been certified. *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249–52 (5th Cir. 2020); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 295–98 (D.C. Cir. 2020) ("Putative class members become parties to an action—and thus subject to dismissal—only after class certification."). The Seventh Circuit has held that *Bristol-Myers* does not apply to class actions. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443–448 (7th Cir. 2020), *cert. denied*, 2021 WL 78484 (U.S. Jan. 11, 2021). The Ninth Circuit has not yet determined whether the reasoning of *Bristol-Meyers* also applies to class actions, and some district courts have applied its holding to class actions while others have not. *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1034 (S.D. Cal. 2020).

In the event that this Court declines to follow the D.C. Circuit and the Fifth Circuit on the timing question, then Domino's submits that the district court decisions applying *Bristol-Myers* to dismiss nationwide class actions are the most persuasive. Courts holding *Bristol-Myers* inapplicable to class actions have generally relied on the difference between mass actions and class actions, and in particular the additional requirements of Rule 23 in the class action context. But those distinctions are not meaningful with respect to the due process concerns at the heart of personal jurisdiction.

19

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY TO DISMISS COMPLAINT AND
MEMORANDUM IN SUPPORT
Civil Action No. 2:20-cv-10739-MWF-SK

The constitutional requirement for personal jurisdiction is grounded in the Due Process Clause, which protects a defendant's interest "in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). These protections "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). These Due Process concerns are just as valid in a class action as in a mass tort. *See Carpenter*, 441 F. Supp. 3d at 1037 (concluding that with respect to personal jurisdiction, mass action cases versus class action cases "is a distinction without a difference"). Indeed, the "primary concern" articulated in *Bristol-Myers* was "the burden on the defendant," 137 S. Ct. at 1780 (citation omitted), and that burden is potentially even greater with a nationwide class, which could more easily include plaintiffs from all 50 states.

Nor are these concerns ameliorated by Rule 23. Under the Rules Enabling Act, Rule 23 cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). For example, a class cannot be certified where it would preclude a defendant from "litigat[ing] its statutory defenses to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). If anything, that principle applies with even greater force with respect to litigating constitutional defenses.

Because this Court "lacks personal jurisdiction over the claims of putative class members with no connection to [California]," it should dismiss those claims. *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017).

## CONCLUSION

For the foregoing reasons, Domino's respectfully requests that the Court compel arbitration and stay this matter pending arbitration. In the alternative, Domino's respectfully requests that this Court dismiss the complaint under Rule 9(b) and dismiss

20

1    Plaintiffs' nationwide class allegations under Rule 12(b)(2) for lack of personal
2    jurisdiction.

3

4    Dated:   March 15, 2021          By:    _/s/ Matthew Donald Umhofer_

5                                        **SPERTUS LANDES & UMHOFER LLP**
                                         Matthew Donald Umhofer (#206607)
6                                        matthew@spertuslaw.com
                                         Elizabeth A. Mitchell (#251139)
7                                        emitchell@spertuslaw.com
                                         1990 S. Bundy Drive, Suite 705
8                                        Los Angeles, CA 90025
                                         Telephone:  (310) 826-4700
9                                        Email: mumhofer@spertuslaw.com
                                         Email: emitchell@spertuslaw.com
10
                                         **WILLIAMS & CONNOLLY LLP**
11                                        Edward C. Barnidge (*pro hac vice*)
                                         David M. Horniak (#268441)
12                                        Matthew W. Lachman (*pro hac vice*)
                                         725 Twelfth Street, N.W.
13                                        Washington, DC 20005-5901
                                         Telephone:  (202) 434-5000
14                                        E-mail: ebarnidge@wc.com
                                         E-mail: dhorniak@wc.com
15                                        E-mail: mlachman@wc.com

16                                        *Attorneys for Defendants Domino's Pizza LLC*
                                         *and Domino's Pizza, Inc.*
17

18

19

20

21

22

23

24

25

26

27

28